We'll call the case of Florencio Rolan V.District Attorney of the County of Philadelphia and Brian Coleman and Mr. Merenstain. Good afternoon, Your Honors. May it please the Court, Bruce Merenstain on behalf of Appellant Florencio Rolan. I'd like to reserve three minutes for rebuttal.  Thank you, Your Honor. Your Honors, at Florencio Rolan's 2007 retrial for the 1983 shooting of Paulino Santiago, the Commonwealth's case for first-degree murder, which is really what we're talking about here, essentially came down to a comparison of the testimony of Francisco Santiago on the one hand and Daniel Vargas on the other hand. These two witnesses offered very different assessments, very different descriptions of what happened on the night in question. According to Francisco Santiago, Florencio Rolan came into the house after his brother Paulino. Paulino was unarmed, non-aggressor, and he was shot. According to Daniel Vargas, Florencio Rolan was already in the house when Paulino Santiago came into the house with a knife, shouting a threat, and then he was shot. Very different assessments for the Commonwealth's case for first-degree murder. Let me ask you a question, counsel. On the prosecutorial misconduct claim that was dismissed on 1925 B Grants by the Superior Court, you say that that warrants a de novo, not deferential review. But didn't the Superior Court deal with that? Didn't it kind of do belt and suspenders? It indicated the procedural in 1925 B, but then go on to discuss the merits anyway? It discussed the merits of the claim that it was bound by this Court's decision regarding Daniel Vargas' absence from the trial. We don't dispute that. So it did say, and it said, we believe, absolutely incorrectly, according to Supreme Court precedent, that it was not bound by this Court's decision. So it did address the merits to that extent, and so that would be subject to deferential review under AEDPA. But it did not address some of the other arguments that we made in the Superior Court, such as the specific arguments about other aspects of prosecutorial misconduct. For example, the discussion about the inadmissible statement of Francisco Santiago or the misstatement as to what was in Daniel Vargas' affidavit. The whole, I think it's part two, I think it's Roman numeral two of our argument in the brief. They did not address that at all. They found that waived and did not address it. But the Daniel Vargas issue, whether the specific issue of whether or not the State courts were bound by this Court's decision, they addressed that and got it absolutely wrong. The law is abundantly clear from the Supreme Court and from this Court that the State courts are bound by decisions of the Federal courts in the same matter. When this Court found, by clear and convincing evidence, that Daniel Vargas was willing and available to testify at Florencio Roland's original trial, that Roland wanted him to testify, and the only reason he did not is because counsel was constitutionally ineffective, that was a holding that was binding on the State courts when this case went back for a retrial. Where is the firewall here? Could the prosecutor have commented at all about Vargas' credibility? Absolutely. And we have never disputed that. Despite what the Commonwealth says, despite what the Superior Court says, we have said in every brief in this case, of course, every witness' credibility is subject to comment and dispute. But what's your specific complaint, then, about Vargas' – about the commentary on Vargas' testimony? Well, there's a number of them, but the primary one, Your Honor, is the comment, the lengthy and repeated comment on his absence for 13 years. Okay. And specifically on his absence from the – Well, it basically said where – as I read – as I read what you're complaining about, let's make sure we put it in context. First of all, what you're complaining about came in closing arguments by the Commonwealth, correct? Correct, Your Honor. Okay. And that came after your client's counsel at that time gave his closing argument. Correct. And part of the closing argument about – at least as it related to Vargas on behalf of your client's counsel was that Vargas' testimony was credible. Absolutely. Okay. So at the Commonwealth's closing, the questions are then raised about where was the self-defense in 1984 when these proceedings were going on and the witnesses were being called to testify? That's one of your complaints. Absolutely, Your Honor, because this Court already addressed that exact issue in the prior word. I'm just trying to isolate. Then the next sentence was then 13 years later – 13 years later, can you imagine this? In 1996, they parachuted him out of nowhere to say, oh, this is self-defense. Okay, that's one of your complaints. Absolutely. All right. So I wanted to put that in context. How would you have us hamstring a prosecutor at a closing argument stage in a case that was in the procedural posture that this case was in? Well, I don't know what you mean by hamstring. I think that the prosecutor could – I said how would you have us. What would you have us say that a prosecutor couldn't do as it related to his commentary on credibility of a witness who testified at the second retrial? I think that what this Court's first decision essentially told the Commonwealth it could not do is to relitigate the issue of where was Daniel Vargas. Why didn't Daniel Vargas testify in 1984? Was Daniel Vargas willing to testify? This Court found that we proved by clear and convincing evidence, which was the standard we needed to prove, that Daniel Vargas was willing and available to testify. So that was an issue that had already been decided by this Court. Did you make an – on your point. Did you make an eliminate motion, therefore, to preclude the Commonwealth from making any reference? I presume that in a perfect world you see the State Court, State Trial Court precluding any reference to Vargas' absence altogether, right? Yes. Well, yeah, I'm not sure I made any reference. If you don't, then I'm not sure what we're talking about. But, no, if I understand the question correctly, Your Honor, yes. Vargas' absence was due to counsel's constitutional ineffectiveness. That's what this Court found. And, yes, so there'd be no basis for counsel. And, in fact, we did move to preclude any reference to even broader where was self-defense, why wasn't this brought up, because this Court found that where was self-defense is it wasn't there because counsel was constitutionally ineffective. Once the prosecutor made the parachute drop reference as it related to Vargas, what did the judge do that was deficient in terms of his curative instruction? Well, she didn't give a curative instruction. I mean, a curative instruction, and if you look at all the prosecutorial misconduct cases cited in the briefs, a curative instruction is one where the court says to the jury, you heard the prosecutor say the following thing, you know, don't pay attention to that because it's wrong or because it was inadmissible. There was no curative here. Well, maybe it was a comment. You say a halfway curative instruction, that's your view, because the judge, as I recall, said that Mr. Vargas didn't testify because the defendant didn't call, didn't get into the ineffectiveness issue. What should the judge have done? She should have done exactly what we asked right after the closing argument, which was instructed the jury that Daniel Vargas was available and willing to testify, that Florencio Roland stood up at his prior trial and said I want him to testify, and that the only reason he didn't testify, as this court found, was because counsel representing Mr. Roland at the time was constitutionally ineffective in not calling him. That's what we asked the court to instruct, and we didn't ask for that until the closing argument that relied so heavily on Vargas' absence, that relied so heavily on something that came directly, as this court found, from counsel's ineffectiveness. But didn't the court say that the defense counsel failed to call Daniel Vargas? The court said that neither side called him. Vargas was known to both sides. Go back. Didn't the court say and use the words that defense counsel failed to call Daniel Vargas? Yes, but that's certainly a far cry from what we asked. That essentially tells the jury there was something wrong with Daniel Vargas' testimony, not there was something wrong with the counsel. What this court found was it was not because of Daniel Vargas. Again, that's what the superior court found back in the PCRA hearing. This court found that that was clearly and convincingly wrong, and that the reason Vargas didn't testify was not because Vargas didn't want him to, not because Roland didn't want him to, but because counsel was constitutionally ineffective. And that's a very different thing than telling the jury counsel failed to call him. In fact, I would argue it's almost the opposite. Let me ask you this question. We're almost 30 years past his death, and you would have this court reverse and presumably order a new trial, correct? Absolutely. How do you fairly try, Mr. Roland? You got two critical witnesses who were dead in the last trial, still dead, obviously. There may be other dead witnesses. I don't know beyond that, but certainly memories begin to get faulty. How can Mr. Roland get a ñ how can any court fairly try this case 29 years later? Well, I guess I have two answers, Judge Jones. First of all, it wouldn't be that different than the 2007 retrial, because as I said at the outset, the two key witnesses, Francisco Santiago and Daniel Vargas, were already dead at that point, as you point out. They're still going to be the two key witnesses. There's not going to be any new evidence, and it's still going to be up to a jury to weigh their evidence in black and white without having the chance to see them testify. So it won't be any different. But the other answer is, and this happens all the time, if he did not get a fair trial in 1984, as this Court found, and he did not get a fair trial in 2007, as we firmly believe, and I think the record shows, that's not his problem, that he is entitled still to a fair trial. And if the Commonwealth can't try him fairly after 28 years, then that's something that the Commonwealth will have to deal with. They should have done it fairly the first time or the second time. My view is that the Santiago cross looked pretty adequate to me, but taking your argument for a second and then taking that together with the Vargas issue, are you suggesting that we basically come up with a law, if we reverse, that we come up with a laundry list of instructions for the trial court, that we shackle a trial judge with a whole bunch of sort of a punch list of things that she has to follow in a retrial? I don't think that you need a punch list. I think that if the Court had just followed this Court's decision in the first appeal, which I think was crystal clear in finding by clear and convincing evidence that Daniel Vargas was available and willing and so forth, I think if the Court had simply followed that, it wouldn't need a punch list or a laundry list of things. In terms of Francisco Santiago, which is our fourth issue, I think, if you agree with us that his testimony, that the original cross-examination was not adequate, then his testimony would be stricken and would not be available. So I don't think the Court needs a laundry list. That would be your ruling. And if it's followed this time, his testimony would not be read to the jury as it was at the retrial. But in terms of Daniel Vargas, it's very simple. The prosecutor should not be able to invoke, essentially, counsel's ineffectiveness from the first trial in order to discredit Daniel Vargas and get a conviction. That's all that we were asking for. I want to ask a question on post-arrest silence. What I don't understand is, as you pose the argument, let me make sure that I have the facts right, it wasn't silence per se. There was a comment made and then there was commentary on that comment, right? Well, the commentary was he didn't say anything else. And there are cases very similar to that where the defendant, the accused, says something and then doesn't say anything further. Well, once the defendant says something, doesn't that take it out of post-arrest silence? The cases don't support that, Your Honor. I mean, the cases talk about a comment on the failure to say anything, even if something is said. Now, if he waives his Miranda rights – So you draw a distinction between a comment on the failure to say something else and a comment on the comment itself? Oh, sure. I mean, the comment itself is something incriminating and it wasn't here. But if it was, you know, that's fair game. I mean, essentially for that comment. But to say he didn't say anything else, to say that's all, he didn't say anything else, where was his self-defense at that time, is a comment on his silence. After he's been told that his silence won't be used, his failure to say anything won't be used against him. Thank you. We'll have you back on rebuttal. Ms. Murray? Marilyn F. Murray for respondents. I'd like to just note initially that petitioner's first claim was found to be waived by the Pennsylvania Superior Court for failure to include it in his 1925B statement. That waiver is a procedural default, and it's a failure to include an issue in a 1925B statement is inadequate and independent of state ground, barring federal habeas review of that claim. So you don't buy the fair extrapolation argument that the appellate makes in this case, that they really did have notice? No, I don't, Your Honor. What petitioner raised, or what Mr. Voland raised, was a claim of instructional error, not a claim of prosecutorial misconduct in argument. And I would note, I'll get to this later, but there was no motion for mistrial at the end of the prosecutor's closing. All that defense counsel asked for was a cautionary instruction. And the cautionary instruction they initially wanted was an instruction to the effect that this court, that the Third Circuit Court of Appeals, had found that Rolon's prior counsel was ineffective for not investigating self-defense and investigating Mr. Vargas and calling Vargas. The trial court didn't want to get into prior trials, findings by prior juries, findings by different courts. So the court ultimately decided to charge the jury as follows. And I will note that defense counsel made no objection after this instruction was given to the jury. And prior to the court giving the instruction, counsel had conceded that this instruction would be outright. And the instruction was, ladies and gentlemen, Daniel Vargas was known to both the Commonwealth and the defense at the time of the prior proceeding in 1984. The court was very careful to talk about prior proceedings rather than prior trials, because she didn't want the jury to be prejudiced by a prior finding. You know, she didn't want them to conclude that this particular defendant had been found guilty by a prior jury. And then she said, however, prior defense counsel failed to call Daniel Vargas at the earlier proceeding in 1984. That's it. No objection to it. Now, I suggested to the court that that charge is really what Petitioner Rolon was asking for in layman's terms. Well, I'm not so sure. The jury isn't going to really know what ineffective assistance of counsel is anyway. Well, what gives me pause, and I can well understand how the trial judge was facing a conundrum here and that she didn't want to go too far and get into, for example, potentially prejudicial areas or things that were beyond the ken of the jury, ineffective assistance of counsel, and so forth, but left unsaid in that instruction, curative or not, is that, as characterized by this court in its prior decision, that Mr. Vargas was willing to testify for the defense. Not just that he wasn't called, but that he was willing to testify.  Now, I think I need to better explain the prosecutor's argument. I submit that the prosecutor properly argued that the jury should consider Vargas's admitted failure to come forward until 1996. He testified that he didn't talk to anyone about the case until 1996. The prosecutor was entitled to argue to the jury that this 13-year delay was relevant to the jury's assessment of his credibility. The argument was not about the prior counsel. It was about Vargas. Not did anyone ask him to come forward, but did he volunteer anything for 13 years? It's not about counsel's inaction, but Vargas's inaction. Vargas said nothing for 13 years, not to police at the scene, even though he was there at the scene, not in the days after the murder, to police, family, or anyone, when the other witnesses gave statements to police. They concede, counsel, that comments on Vargas's credibility were fair game, and that seems to be established. I don't think that there's a controversy about that. I think, though, you have to put that in context if you accept their argument. It's that you have to put it in the context of the fact that he was initially sort of ab initio willing to testify for the defense, which is what this court said. It recognized. Now, the superior court may not agree with that, but that's what this court found. How do you reconcile that? Well, my point is the comments that the prosecutor was making were based on Vargas's own testimony. He said, I never talked to Roland while the whole time he was on the land. I never mentioned being a witness to Mr. Roland when I ran into him in jail in 1984, and Roland said to me, the guy came at me with a knife. And according to Vargas, he said nothing to Roland. He was interviewed by a detective. He said nothing. Not after Roland was killed. But he said he thought the detective wanted him to testify against Roland. That's what he said. But he also signed a statement that said that he was being interviewed as a witness for Roland. I mean, there was confusion. He said he was confused, but he signed a statement. Let me stop a second. Go back to your 1925 argument that Judge Jones asked you about. Wasn't there, at least in the claim that was made before the superior court in the PCRA appeal, substantial compliance with the rule? As to that issue? Yes. Wasn't there at least substantial compliance? No, Your Honor. A claim of instructional error is not a claim of prosecutorial misconduct. And that's what the statement said, and it's correct. Well, it may not be a claim about prosecutorial misconduct, but it's still a claim about the question of whether or not the commentary was fair. It's a claim of instructional error. And the claim of instructional error wasn't raised in the superior court. Then it became prosecutorial misconduct. So your answer is you do not think he substantially complied? No, I do not, Your Honor. All right. Okay. And the State court ruled that he didn't substantially comply. All right. Okay. And I would submit that this Court, in an unpublished opinion, has found Rule 1925B to be inadequate or an independent State ground, barring Federal habeas regime. Which we're not bound by, of course. Excuse me, Your Honor? Which we are not bound by, since it's not published.  I said it was an unpublished, and I realize you're not bound by that. I also would note that the lower courts have repeatedly found this to be an adequate and independent State ground. As did Judge Schiller in this case, I believe.  Go ahead. Do you concede? But numerous cases. I have two pages of cases where they found it to be adequate and independent. Do you concede the post-arrest silence violation that the defense, the appellant argues? No, I don't. The comment, as I think Your Honor was asking about that before, the comment really wasn't about silence, but what Rolon actually said when he was finally apprehended. The comments were responsive to the defense argument that Rolon was very cooperative when he was finally apprehended after he'd been on the land for six months. And he mentioned what he said. Now, I would submit this isn't a comment on silence because Rolon wasn't silent. He said something. Well, it said, though, that it was the only thing that he said. Correct, Your Honor. Which I think implicit in that is that it is a comment about his silence. But I might agree that if you take that in isolation and in the context, for example, of the fair comments about flight, that that's okay. And I don't think that in and of itself is problematic. But then you look at Moore and you look at Greer, and what I'm struggling with is you have that. You have apparently the misstatement of the evidence, taking things out of context, reading things that weren't there by the prosecutor, and then you combine it with Vargas, which you say we never get to because of the 1925b. Doesn't that potentially trigger a Greer or a Moore problem? Don't you have to take these things cumulatively and not in isolation? Well, I think when you look at them cumulatively, they still don't amount to anything. With respect to the silence, let me just finish that. Under Brecht v. Abrahamson, clearly, even if this was a comment on silence, and I submit it wasn't, but even if it was, it's plainly harmless given the extensive evidence of silence prior to arrest and prior to any Miranda when he was on the land, when Rolland was on the land for like six months. That's that. Now, as far as misrepresentation of evidence, first of all, that claim, once again, was found to be waived by the Pennsylvania Superior Court, for the most part, with one exception. And that is an adequate and independent state ground. Failure to put argument in a brief is an adequate basis for a default. And I submit the claims are very detailed, but they're thoroughly discussed in our brief, and there was no misrepresentation. With regard, for example, to the 911 call, this is just an example. Petitioner claims that the prosecutor misrepresented the 911 call. The caller said she saw a man with a rifle and that the man ran into the house. That the man ran into the house with a rifle is a reasonable inference from the 911 call. The Pennsylvania Superior Court, in fact, found the claim that the 911 caller never said she saw someone running into the house with a rifle is a, quote, tortured distortion of the record and clearly erroneous. That's just one example. I submit that if you review the allegations and look at each allegation, there was no misrepresentation. With regard to the first claim, I would note that notwithstanding prior counsel's failure to contact Vargas, Vargas himself never came forward, despite many opportunities. He never told anyone he knew anything, much less that he was willing to testify. But doesn't that go to credibility? Yes, and that's my point, Your Honor. That's what counsel was arguing. Well, that may be what counsel was arguing. Or the prosecutor was arguing, excuse me. To a point. But he also said that he parachuted in, which would make the jury believe, until there was the, whatever it was, curative or otherwise, a statement by the court that he didn't just parachute in and that he was around back in 1983, but that he wasn't called to testify by either side. So that was fine as far as it went, but it seems to be the appellate's position that it should have gone further, and they should have been specifically instructed, that jury, that he was willing to testify for this court's prior ruling for Mr. Rowland in the prior case, had he been called. And I would submit that defense counsel, Mr. Rowland, counsel for Mr. Rowland got exactly what they asked for. If you read the dialogue back and forth, they finally agreed that this was an appropriate instruction. I submit that there's very little difference between this instruction and the one that counsel initially asked for, which was to tell a jury, 12 lay people, that someone was found ineffective for not calling a witness. They don't know what ineffective assistance in counsel is. So not objecting to the instruction, not moving for a mistrial, that's fatal to their position? Yes. I mean, aside from the 1925B default. Plus the 1925B. But there was no motion for a mistrial. All they asked for was cautionary instruction, and this is very close to what they asked for, if not exactly what they asked for. And I submit to the Court that it cured any possible error that may have occurred in terms of the prosecutor's remarks. And I would also note that this Court has repeatedly held that a prosecutor may properly comment on the credibility of witnesses. One case would be Favors v. Horn, a case from this Court out of 2008. Also a habeas case. I would also note that. You have to acknowledge, Ms. Murray, that the facts of this case are pretty unique and different than any other that I've seen, at least on the issue that's before us is at least the crux of what the decision that previously had been before this Court led to a retrial. It's a unique case, Your Honor. It just doesn't. And when you look at this, it just doesn't of sorts feel like it was totally right that the prosecutor was able to comment to the degree that he or she commented on Vargas. Well, I would submit that there is nothing inconsistent with the State Court's decision or the prosecutor's argument. There's nothing inconsistent with this Court's prior decision and the prosecutor's argument. Once again, it's about the witness's own testimony and his failure to come forward with the self-defense claim for 13 years. It's not about whether counsel was ineffective for not interviewing him. It's about you have a witness who's there on the scene, and he doesn't come around until 13 years later, and he never comes forward. It's only because current counsel finally interviews him. I might also note something else, because I know the Court was a little concerned about the whole question of cumulative error and what have you. The prior decision in this case, the Court kind of thought the evidence was kind of weakly supported by the evidence. The case was kind of, the conviction was somewhat weakly supported. I must stress that this is a very different case today. The 2007 trial was very different. First of all, Rolland conceded that he shot and killed the victim and threw the rifle in the alleyway. The only issue before the jury was whether Rolland picked up the rifle inside the house and shot the victim in self-defense, or he entered the house with the rifle and shot the unarmed victim in the chest. He shot him in the heart. The self-defense version presented through Vargas, and he was the only witness to support this defense theory, was refuted by the physical evidence, the testimony of Francisco Santiago and Edwin Rosado, Vargas' own inconsistencies, and most importantly, the 911 call, which reported a man with a rifle entering the house. That 911 call was not introduced at the first trial. And the 911 call was devastating to Rolland's self-defense claim. And it was not presented at the first trial. Okay. Ms. Murray, thank you. Thank you very much. Your time is up. Thank you. And we'll have Mr. Marenstein back on rebuttal. Yeah, I can't correct all of the mistakes on the last point that Ms. Murray made regarding the evidence. I think if you look at the record, the evidence is essentially the same. You should focus on that. It would behoove you to focus on that. Well, the evidence was essentially the same as from the first trial. Edwin Rosado testified at the first trial. He testified consistently at both trials that he did not see a rifle in Mr. Rolland's hand when he went into the house. That certainly doesn't support a first-degree murder case. Was there a 911 call? The 911 call was available at the first trial, and the prosecution, for whatever reason, chose not to use it. It's been available since the beginning of the case. The 911 call does not, and you can read it for yourself, and I can tell you what it says, but it does not say that the person saw it. Did Mr. Rolland testify at the first trial? No, he did not. Okay, so that's a big difference. Well, he didn't. Rolland did not testify at the second one either. Okay. So the testimony was essentially the same. The testimony about what happened that night, it was from Francisco Santiago and Edwin Rosado who testified at the original trial, and Daniel Vargas who did not and who clearly supported Mr. Rolland's case for self-defense. Do you agree with Ms. Murray's assertion that you agreed with the instruction? You say it wasn't a curative instruction by the trial judge related to the prosecutor's comments on Vargas? Absolutely not, Your Honor. At the beginning of the long colloquy that's in the record, we made clear that the only curative was the one I discussed during my argument before about what this Court had found regarding Daniel Vargas and his willingness to testify and why he didn't testify. There was a long discussion during which the Court reiterated its point, and I don't think I got a chance to answer Judge Greenway's question about this before, that she had made before trial that there would be, and I think Ms. Murray referred to this, that there would be no discussion of any prior proceedings. So to our way of thinking, you know, she had already ruled on that, and she made that clear. When the prosecutor said to her, Judge, you can't tell this jury what they want you to tell the jury, she said, excuse me, I know that. And after further discussion, she eventually said, this is what I'm going to tell the jury. At that point, our objection was on the record. The state law in Pennsylvania is clear. Federal law is clear. We didn't have to make another objection. So you preserved it? We absolutely preserved it. And the Superior Court never found that we had waived that. Right. So that issue was not waived. The other point that I think is important about the evidence is this is not just a matter of was this self-defense or was it first-degree murder. The jury was charged in first-degree murder, third-degree murder, and voluntary manslaughter, as well as self-defense. And after 28 years, which is how long Mr. Rowland had served, anything other than a first-degree murder conviction and he would be a free person, a free man, because third-degree murder had a maximum of 20 years. Voluntary manslaughter had a maximum of 10. We believe that he acted in self-defense and that that case was put forward. But even if the jury decided that they weren't quite sure it was the self-defense, if the Commonwealth had not improperly, completely discredited Daniel Vargas by violating what this Court ruled in its first ruling in this case, there's no way the jury would have come back with a first-degree murder conviction. But you said they completely discredited him. I mean, that's for the jury to decide. Now, they decided that in their verdict, coming back with a first-degree murder verdict. But your client's counsel argued that he was very credible. So the jury had to pick between two versions. Can I answer that, Your Honor? I see I'm out of time. And I've said this, again, I've said this before in the argument, there is no question, I think Judge Jones reiterated this, there's no question that they could have discredited Daniel Vargas. They could have talked about the fact that at one point he says he's on one side of the street, at another point he's on a different side of the street. Absolutely. That's fair game. They didn't go there, though. Instead, they relied on the inappropriate revisiting. And everything Ms. Murray said about where was Daniel Vargas when she just said her argument is relitigating what this Court decided, what the district court decided in the first habeas case, and what this Court affirmed. This Court found by clear and convincing evidence where Daniel Vargas was. And that was the end of it. At that point, the law is clear. It cannot be relitigated in state court. So that was off limits. Anything else would have been fair game. Let me ask you one other question. I may have misstated it in a prior question to you. At the first trial, what did your client argue? Did he argue self-defense at the first trial? No, his counsel put on no case whatsoever. What about in closing argument, though? He pretty much said, you know. No reasonable doubt. He said reasonable doubt. It was dark. It was nighttime, you know. We all know. Commonwealth didn't prove their case. Right. That was it. So it's coming forward at the 2007 trial, as Ms. Murray said, was the first time that this self-defense argument was put forward, both in Vargas' testimony and in argument before the jury. It was the first time it was put forth before a jury in the actual held innocence. Absolutely, Your Honor. Okay, I'm just trying to match up the trials. Yes? I have one last question. Sure. Is it your position that the Vargas error by the prosecutor is sufficient in and of itself for reversal? Absolutely. Okay. Absolutely. I mean, I don't have a problem saying, and I think this is clear from our briefs, that to us the most egregious error, the one that absolutely requires reversal, is the defiance of this Court's prior opinion and decisions on Vargas. So absolutely, Your Honor. No further questions? Thank you. Thank you, Mr. Merenstein. We thank both counsel for a case that was very well argued, and we'll take the matter under advisement.